IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NORTHEASTERN DIVISION

| | | |
|---|---|---|
| WAYNE A. BROCK, | ) | |
| | ) | |
| Plaintiff, | ) | No. 2:10-cv-00075 |
| | ) | |
| v. | ) | Judge Nixon |
| | ) | Magistrate Judge Griffin |
| CAROLYN W. COLVIN, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER

Pending before the Court is Plaintiff Wayne A. Brock's Motion for Judgment on the Administrative Record ("Motion"). (Doc. No. 17.) Defendant Commissioner of Social Security filed a Response in Opposition. (Doc. No. 23.) Magistrate Judge Griffin issued a Report and Recommendation ("Report") recommending that Plaintiff's Motion be granted and the decision of the Administrative Law Judge ("ALJ") be reversed granting a direct award of benefits to Plaintiff. (Doc. No. 24.) The Commissioner filed an Objection to the Report ("Objection"). (Doc. No. 25.) Upon review of the Report and for the reasons stated below, the Court **GRANTS** Plaintiff's Motion, **ADOPTS in part** the Report with the modifications given herein, and **REMANDS** the case to the Commissioner for further proceedings as outlined below. Also pending before the Court is Plaintiff's Motion for Status. (Doc. No. 26.) Upon entry of this Order, the Motion for Status is **TERMINATED AS MOOT**.

I. BACKGROUND

   *A. Procedural Background*

Plaintiff filed an application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") on August 25, 2005, due to depression, anxiety, bipolar disorder, back and hand pain, high blood pressure, asthma, and high cholesterol, all with an alleged onset date of March 1, 2004. (Tr. 23–27, 76, 107.) The Social Security Administration ("SSA") denied Plaintiff's application initially on January 10, 2006, and again upon reconsideration on May 4, 2006. (Tr. 54–67.)

Plaintiff requested and was granted a hearing before an Administrative Law Judge ("ALJ"), which took place before ALJ K. Dickson Grissom on May 22, 2008. (Tr. 13–22.) During the hearing, Plaintiff amended his onset date to June 15, 2005. (Tr. 879–80.) Plaintiff and vocational expert ("VE") Anne Thomas testified at the hearing. (Tr. 876–90.) ALJ Grissom denied Plaintiff's claim on July 24, 2008, making the following findings of fact and conclusions of law:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2009.

2. The claimant has not engaged in substantial gainful activity since March 1, 2004, the alleged onset date (20 CFR 404.1520(b), 404.1571 *et seq.*, 416.920(b) and 416.971 *et seq.*).

3. The claimant has the following severe combination of impairments: bipolar disorder; panic disorder; dependent personality disorder; obesity; and substance abuse disorder (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c) except the claimant is limited to performing simple, repetitive non-detailed tasks where co-worker and public contact is causal and infrequent, where supervision is direct and non-

confrontational, and where changes in the workplace are infrequent and gradually introduced.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born on April 30, 1975 and was 30 years old, which is defined as a younger individual age 18-49, on the amended alleged disability onset date (20 CFR 404.1563 and 416.963).

8. The claimant has a limited education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1560(c), 404.1566, 416.960(c), and 416.966).

11. The claimant has not been under a disability, as defined by the Social Security Act, from March 1, 2004 through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(Tr. 13–22.)

On June 18, 2010, the Social Security Appeals Council denied Plaintiff's request for review, and the ALJ's decision became the final decision of the Commissioner. (Tr. 2–5.) On July 29, 2010, Plaintiff filed this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of the ALJ's final decision. (Doc. No. 1.) On January 3, 2011, Plaintiff filed a Motion for Judgment on the Record (Doc. No. 17), to which the Commissioner filed a Response on May 3, 2011 (Doc. No. 23). On August 27, 2012, Magistrate Judge Griffin recommended that Plaintiff's Motion be granted and the decision of the ALJ be reversed and benefits awarded. (Doc. No. 24.)

The Commissioner filed an Objection to the Magistrate's Report on September 8, 2012. (Doc. No. 25.)

*B. Factual Background*

The Court adopts the portion of the Magistrate Judge's Report addressing the relevant facts of the record. (Doc. No. 24 at 2–12.)

## II. STANDARD OF REVIEW

The Court's review of the Magistrate's Report is *de novo*. 28 U.S.C. § 636(b) (2012). This review, however, is limited to "a determination of whether substantial evidence exists in the record to support the [Commissioner's] decision and to a review for any legal errors." *Landsaw v. Sec'y of Health & Human Servs.*, 803 F.2d 211, 213 (6th Cir. 1986). Title II of the Social Security Act provides that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g) (2012). Accordingly, the reviewing court will uphold the ALJ's decision if it is supported by substantial evidence. *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). Substantial evidence is a term of art and is defined as "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). It is "more than a mere scintilla of evidence, but less than a preponderance." *Bell v. Comm'r of Soc. Sec.*, 105 F.3d 244, 245 (6th Cir. 1996) (citing *Consol. Edison*, 305 U.S. at 229).

A finding of substantial evidence holds significant weight on appeal. "Where substantial evidence supports the Commissioner's determination, it is conclusive, even if substantial evidence also supports the opposite conclusion." *Her v. Comm'r*, 203 F.3d 388, 389 (6th Cir.

4

1999); *see also Crum v. Sullivan*, 921 F.2d 642, 644 (6th Cir. 1990) (citing *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc)). This standard of review is consistent with the well-settled rule that the reviewing court in a disability hearing appeal is not to weigh the evidence or make credibility determinations, because these factual determinations are left to the ALJ and to the Commissioner. *Hogg v. Sullivan*, 987 F.2d 328, 331 (6th Cir. 1993); *Besaw v. Sec'y of Health & Human Servs.*, 966 F.2d 1028, 1030 (6th Cir. 1992). Thus, even if the Court would have come to different factual conclusions as to the Plaintiff's claim on the merits than those of the ALJ, the Commissioner's findings must be affirmed if they are supported by substantial evidence. *Hogg*, 987 F.2d at 331.

### III. PLAINTIFF'S OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT

The Commissioner sets forth three specific objections to the Magistrate Judge's findings in her objection. First, the Commissioner argues the ALJ did not err in assigning no weight to the assessments of a nurse practitioner who had an ongoing treatment relationship with Plaintiff. (Doc. No. 25 at 1–2.) Next, the Commissioner argues the ALJ's decision is supported by substantial evidence. (*Id.*) Finally, the Commissioner argues that even should the Court reverse the decision of the ALJ, the case is not appropriate for a judicial award but should be remanded for further proceedings. (*Id.* at 2–3.) The Court considers the Commissioner's objections below.

*A. ALJ's Assignment of Weight to Nurse Practitioner Groce's Assessment*

The Commissioner first objects to the Magistrate Judge's finding that the ALJ erred in assigning no weight to nurse practitioner Julie Groce's mental Medical Assessment ("Assessment"). (Doc. No. 25 at 1–2.) The Commissioner argues there is objective medical evidence in the record that supports the ALJ's decision not to assign weight to Ms. Groce's

Assessment. (*Id.* at 2.) Thus, the Commissioner concludes that substantial evidence in the record supports the ALJ's decision and the Court should deny Plaintiff's Motion. (*Id.* at 1.)

Under the "treating physician rule," the opinions of a treating physician are generally entitled to great weight when evaluating the proof of disability of a claimant. *Rogers v. Comm'r*, 486 F.3d 234, 242 (6th Cir. 2007). Social Security regulations require ALJs to provide good reasons for the weight they assign to opinions of "treating sources," but not for the weight they assign "other sources." 20 C.F.R. § 404.1527(d)(2); *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 876 (6th Cir. 2007). "Good reasons" means reasons that "are sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Rogers*, 486 F.3d at 242.

20 C.F.R. § 416.913(a) contains a list of "acceptable medical sources" that may provide medical evidence in social security cases; such sources may be non-examining, non-treating, or treating sources. 20 C.F.R. § 416.902 (2013). A nurse practitioner is not defined as an "acceptable medical source," but rather as an "other source." 20 C.F.R. § 404.1513(d)(1) (2013). Because the ALJ is not required to afford weight to sources that do not qualify as "acceptable medical sources," *Boyett v. Apfel*, 8 F. App'x 429, 433 (6th Cir. 2001), the ALJ need not give "good reasons" for the weight she assigns to the opinion of an "other source." *Burke ex rel. A.R.B. v. Astrue*, 2008 WL 1771923, at *7 (E.D. Ky. April 17, 2008).

The ALJ "generally should explain the weight given to opinions" of "other sources" to allow "a claimant or subsequent reviewer to follow the adjudicator's reasoning." SSR 06-03p, 2006 WL 2329939 (Aug. 9, 2006). In addition, the ALJ should discuss factors relating to the other source's assessment, in order to provide some basis for rejecting the opinion. *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 541 (6th Cir. 2007). These factors may include how long the

source has known the claimant, how consistent the opinion is with other evidence, and how well the source explains the opinion. *Id.* Specifically, the ALJ is not free to disregard well-documented and supported opinions by a nurse practitioner in favor of an acceptable medical source who lacks an ongoing treatment relationship with the patient. *Pettit v. Comm'r of Soc. Sec.*, No. 3:08cv257, 2009 WL 3199072, at *2 (S.D. Ohio, Sept. 22, 2009). Further, a doctor's co-signing of a letter from a nurse practitioner indicates at a minimum that the doctor agrees with the nurse practitioner's opinion. *Phillips v. Comm'r of Soc. Sec.*, No. 1:07-cv-675, 2008 WL 4394274, *3 (W.D. Mich. July 2, 2008). However, a nurse practitioner's opinion that is "plainly based on a plaintiff's dubious self-reporting," is entitled to minimal weight only. *Williams v. Astrue*, No. 2:09-CV-042, 2010 WL 503140, at *8 (E.D. Tenn. Feb. 8, 2010).

Due consideration of nurse practitioner opinions is especially appropriate when considering the claims of indigent persons, as many disability applicants are unemployed and thus may receive mental health treatment from non-physician counselors who provide service to lower income patients. *Cole v. Astrue*, 661 F.3d 931, 939 n.4 (6th Cir. 2008). Social Security Ruling 06-03p states:

> With the growth of managed health care in recent years and the emphasis on containing medical costs, medical sources who are not "acceptable medical sources," such as nurse practitioners . . . have increasingly assumed a greater percentage of treatment and evaluation functions previously handled primarily by physicians and psychologists.

2006 WL 2329939, at *3 (Aug. 9, 2006).

Here, the Court finds the ALJ erred in assigning no weight to Ms. Groce's Assessment. The ALJ determined that Ms. Groce's Assessment was "inconsistent" with other objective medical evidence in the record based on the following: (1) Plaintiff's mental health progress notes generally indicated that his "attention was normal; that his behavior was appropriate; and

7

that his memory was intact;" (2) in June 2006, Plaintiff's psychological functioning was "noted as being normal" in his group psychotherapy; and (3) in July 2007, Plaintiff's treating mental health clinician found that he could drive and do other activities he previously claimed he could not do. (Tr. 19.)

In her Assessment, Ms. Groce found that Plaintiff had poor or no ability to: use judgment, deal with work stresses, maintain attention and concentration, understand complex job instructions, behave in an emotionally stable manner, relate predictability in social situations, or demonstrate reliability. (Tr. 506–07.) Ms. Groce determined that Plaintiff had severe bipolar disorder and "is on high dosages of medication which don't fully manage his symptoms of mood swings, mind racing [and] distractability [sic]. He also has panic disorder and he has difficulty in social settings due to this." (Tr. 506.) Ms. Groce concluded that Plaintiff had "fair" ability to: follow work rules; relate to co-workers; deal with the public; interact with supervisors; function independently; understand, remember, and carry out detailed and simple job instructions; and maintain personal appearance. (Tr. 506–07.)

The Court recognizes that the ALJ attempted to explain the inconsistencies between Ms. Groce's Assessment and other evidence. However, the ALJ's rejection of Ms. Groce's Assessment failed to address other salient factors, such as how long Ms. Groce had known Plaintiff and how well Ms. Groce explained her opinion. *See Cruse,* 502 F.3d at 532. Further, the ALJ did not adequately explain the weight given to Ms. Groce's Assessment as to allow "a claimant or subsequent reviewer to follow the adjudicator's reasoning," SSR 06-03p, 2006 WL 2329939 (Aug. 9, 2006), and as the Magistrate Judge emphasized, Ms. Groce "is the only mental health medical professional in the record who developed an ongoing treatment relationship with

the plaintiff after examining him on five occasions between January and June of 2006." (Doc. No. 24 at 23.) Because the ALJ did not account for the ongoing treatment relationship between Plaintiff and Ms. Groce in his evaluation of Ms. Groce's Assessment, the ALJ's decision to give no weight to Ms. Groce's Assessment was in error.

In addition, Ms. Groce's Assessment appears to be well-supported by other evidence in the record. Ms. Groce's opinion that Plaintiff has severe bipolar disorder and experiences wild mood fluctuations, even under high dosages of medication, is consistent with Disability Determination Service ("DDS") psychological examiner Mark A. Loftis's diagnosis of anxiety disorder, not otherwise specified ("NOS"), and depressive disorder, NOS. (Tr. 586.) Mr. Loftis found that Plaintiff was emotionally "fragile," had "some acute anxiety episodes" and "depressive features," and "would be a good candidate to receive an [sic] ongoing counseling services." (*Id.*) Similarly, in November 2005, Dr. Christine Toler and Ms. Groce both diagnosed Plaintiff with mood disorder, NOS; psychotic disorder, NOS; asthma; "Bipolar I Disorder, Most Recent Episode Depressed, Severe With Psychotic Features;" and intermittent explosive disorder. (Tr. 222–27.) Dr. Edward L. Sachs, Ph.D., a non-examining, consultative DDS psychologist, diagnosed Plaintiff with depressive disorder, NOS, and anxiety exhibited through "recurrent severe panic attacks manifested by a sudden unpredictable onset of intense apprehension, fear, terror, and sense of impending doom occurring on the average of at least once a week." (Tr. 533, 535.) A Tennessee Clinically Related Group ("CRG") assessment indicates that Plaintiff's concentration, task performance, and pace were markedly limited and his interpersonal functioning and ability to adapt to change were extremely limited. (Tr. 358–59.) Overall, Ms. Groce's Assessment appears to be well-supported by objective evidence of

9

other treating and non-treating sources, thus the ALJ was not free to disregard the "well documented and supported opinions" of Ms. Groce. *Pettit,* 2009 WL 3199072 at *2.

The Court also finds the ALJ's conclusion that Ms. Groce's Assessment is inconsistent with the evidence of record is not explained with enough detail to allow Plaintiff to "follow the adjudicator's reasoning," as required by SSR 06-03p. 2006 WL 2329939 (Aug. 9, 2006). The ALJ stated that the objective medical evidence shows that Plaintiff's "attention was normal; that his behavior was appropriate; and that his memory was intact." (Tr. 19.) The ALJ cited two isolated instances in June 2006 and July 2007 to show that Plaintiff's mental capacity was normal. (*Id.*) These findings do not contradict Ms. Groce's Assessment, as she stated in her progress notes that Plaintiff's behavior was appropriate, his memory was intact, and his attention was normal between February and June of 2006. (Tr. 517–20.) However, she also documented Plaintiff's "off and on" suicidal thoughts, increased anxiety and depression, multiple panic attacks a week, and difficulty concentrating. (*Id.*) Further, as the Magistrate Judge correctly noted, Ms. Groce's assessment of Plaintiff's Global Assessment of Functioning ("GAF")[1] scores are consistent with the GAF scores assigned to Plaintiff by other mental health care professionals. (Doc. No. 24 at 23.)

The Court also finds Ms. Groce's mental assessment and medical progress notes should be given greater weight than general opinions of "other sources" because they were co-signed by Dr. Lanny Leftwich, a psychiatrist. (Tr. 506–08, 517–18.) "[A] doctor's signature on the opinion letter by the nurse practitioner is meaningful; at the very least, the doctor's decision to

---

[1] The Global Assessment of Functioning test is a subjective determination that represents the "clinician's judgment of the individual's overall level of functioning." *Edwards v. Barnhart,* 383 F. Supp. 2d 920, 924 n. 1 (E.D. Mich. 2005) (citing Am. Psychiatric Ass'n., *Diagnostic and Statistical Manual of Mental Disorders* 30 (4th ed. 1994)). The score ranges from 100 (superior functioning) to 1 (persistent danger of severely hurting self or others, persistent inability to maintain personal hygiene, or serious suicidal act with clear expectation of death).

co-sign a letter from a nurse practitioner indicates an agreement with the opinions expressed in the letter." *Phillips*, 2008 WL 4394274 at *3. A doctor's signature on a nurse practitioner's medical assessment may not automatically transfer the nurse practitioner's opinion from "other source" to "acceptable medical source." However, Dr. Leftwich's signatures on Ms. Groce's Assessment and medical progress notes bolster the assertion that Ms. Groce's Assessment is well-supported.

In short, the ALJ failed to explain why he assigned no weight to Ms. Groce's opinion so as to allow Plaintiff "or subsequent reviewer to follow the adjudicator's reasoning" and his explanation did not address multiple probative factors, including how long the source has known the individual and how well the source explains the opinion. The ALJ also erred in concluding that Ms. Groce's opinion is inconsistent with other evidence in the record. Therefore, the Court finds the ALJ erred in according no weight to Ms. Groce's opinions.

### B. Evidentiary Support for the ALJ's Findings

The reviewing court will uphold the ALJ's decision if it is supported by substantial evidence, *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984), which is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). Thus, courts must uphold an ALJ determination if, as a whole, the evidence of record substantially supports the conclusion. *Allen v. Califano*, 613 F.2d 139, 145 (6th Cir. 1980). The Court may not "focus and base our decision entirely on a single piece of evidence, and disregard other pertinent evidence." *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978).

In accordance with the Social Security Act, the Commissioner conducts a five-step analysis to evaluate disability claims:

> First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability. . . . Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience. Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled. For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled.

*Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001) (internal citations omitted). "The claimant bears the burden of proof during the first four steps, but the burden shifts to the Commissioner at step five." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 548 (6th Cir. 2004).

Here, the Court finds substantial evidence does not exist in the record to support the ALJ's decision to deny Plaintiff benefits. The ALJ did not dispute that Plaintiff's bipolar disorder, panic disorder, dependent personality disorder, obesity, and substance abuse disorder were severe impairments. (Tr. 15.) Nor did the ALJ dispute that Plaintiff could not perform any past relevant work. (Tr. 17.) However, the ALJ resolved Plaintiff's claim at step five of the analysis by finding that Plaintiff has the residual functional capacity to perform medium work limited to "performing simple, repetitive non-detailed tasks where co-worker and public contact is casual and infrequent, where supervision is direct and non-confidential, and where changes in the work place are infrequent and gradually introduced." (*Id.*) In reaching this conclusion, the ALJ relied heavily on the VE's testimony that Plaintiff would be precluded from performing his past relevant work but could perform medium and unskilled work as a production laborer, hand packer, or production machine operator. (Tr. 887.)

12

The weight given to Ms. Groce's Assessment is especially salient to the ALJ's determination because the VE testified that, had Plaintiff suffered from the restrictions in Ms. Groce's Assessment, he would have been precluded from work altogether. (Tr. 888–89.) Therefore, the Court finds that, had the ALJ assigned Ms. Groce's Assessment due weight, the VE's testimony would not support a decision that Plaintiff could perform "simple, repetitive non-detailed tasks where co-worker and public contact is casual and infrequent, where supervision is direct and non-confidential, and where changes in the work place are infrequent and gradually introduced" (Tr. 17). Instead, the VE testified that, had she relied on Ms. Groce's Assessment, she would have found Plaintiff not able to perform even "simple, repetitive non-detailed work." (Tr. 888–89.) The Court is not permitted to pass on the issue of the credibility of Ms. Groce's Assessment. *Hogg*, 987 F.2d at 331. However, the Court finds that because: (1) Ms. Groce's Assessment is pertinent to the VE's testimony; (2) the ALJ relied heavily on that testimony in deciding to deny benefits; and (3) the Court has already determined that the ALJ erred in giving Ms. Groce's opinions no weight, the ALJ's decision could not have been based on substantial evidence.

Further, the ALJ failed to give an adequate explanation for the weight he assigned to the opinions of Plaintiff's treating physicians. Under the "treating physician rule," the opinions of a treating physician are entitled to great weight when evaluating the proof of disability of the claimant. *Rogers*, 486 F.3d at 242. Accordingly, the ALJ must give "good reasons" for giving more or less weight to an opinion of a "treating source," *see Smith*, 482 F.3d at 876, because the treating physician has had the greatest opportunity to examine and observe the patient, and is generally more familiar with the patient's condition based on his or her duty to care for the patient, *Walker v. Sec'y of Health & Human Servs.*, 980 F.2d 1066, 1070 (6th Cir. 1992). A

treating physician is defined as a claimant's own physician or other acceptable medical source who has provided the claimant with medical treatment or evaluation and who has or had an ongoing treatment relationship with the claimant. 20 C.F.R. §§ 404.1502, 416.902 (2013).

Here, the ALJ's findings do not reflect whether the record contains opinions from any treating sources and how the ALJ evaluated those opinions. The ALJ's failure to delineate what opinions he considered to be treating sources and to give "good reasons" for the weight given to those opinions is a problematic oversight.

In sum, the ALJ's decision is not supported by substantial evidence of record. The Commissioner has the burden to prove that Plaintiff is capable of performing a significant number of jobs within his RFC under the last step of the five-step analysis. The ALJ's decision here relied heavily on the VE's testimony, which was tainted by the ALJ's error in assigning Ms. Groce's Assessment no weight. In addition, the ALJ failed to explain whether there are any treating sources available and what weight they should be given, if any. The Court finds the ALJ's failure to assign any weight to Ms. Groce's opinion and to identify and give weight to treating sources renders his decision lacking substantial evidentiary support.

*C. Remedy*

In finding the ALJ erred in assigning no weight to Ms. Groce's Assessment, the Magistrate Judge recommends the Court grant Plaintiff a judicial award of benefits retroactive to June 15, 2005, because in the her opinion, Plaintiff's "entitlement is adequately established by overwhelming proof of disability or strong proof of disability without significant proof to the contrary." (Doc. No. 24 at 25.) In addition, the Magistrate Judge reasons that a remand in this case would "neither be practical nor make sense." (Doc. No. 24 at 26.) The Commissioner objects to the Magistrate Judge's Report, arguing that the appropriate action is to remand the

14

case to the Commissioner for further proceedings. (Doc. No. 25 at 3.) The Commissioner emphasizes that Ms Groce's opinion is not an "acceptable medical source" and that evidence in the record supports the ALJ's decision. (*Id.*) The Commissioner relies on *INS v. Ventura*, 537 U.S. 12, 16–17 (2002), for the proposition that, once an agency determination is reversed, courts should generally remand administrative cases for determination of matters statutorily delegated to the agency, because the agency has the most relevant expertise. (Doc. No. 25 at 3.)

Courts can reverse decisions of the Commissioner and immediately award benefits only if "all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits." *Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 176 (6th Cir. 1994). A judicial award of benefits following reversal of the Commissioner's denial is appropriate only where "the decision is clearly erroneous, the proof of disability is overwhelming, or proof of disability is strong and evidence to the contrary is lacking." *Mowery v. Heckler,* 771 F.2d 966, 973 (6th Cir. 1985). On the other hand, courts are obliged to remand cases to the Commissioner if all essential factual issues have not yet been resolved. *Newkirk v. Shalala,* 25 F.3d 316, 318 (6th Cir. 1994).

Here, the evidence regarding whether Plaintiff is capable of performing a significant number of other jobs, based on his RFC, is not particularly well developed on either side. The VE testified that Plaintiff could perform medium and unskilled work as a production laborer, hand packer, or production machine operator. (Tr. 887.) However, the VE also testified that Plaintiff would not be able to perform any such work under the restrictions in Ms. Groce's Assessment. (Tr. 888–89.) Thus, the VE's testimony has the potential to lead the ALJ to two entirely distinct conclusions depending solely on how much weight the ALJ assigns Ms. Groce's opinions. While the Commissioner bears the burden of proof under this step of the analysis, the

Court finds evidence in the record does not "overwhelmingly" establish that the Commissioner could not prove Plaintiff's capacity to perform a significant number of such jobs. *Mowery*, 771 F.2d at 973.

In addition, though the ALJ failed to provide an explanation for why he assigned no weight to Ms. Groce's opinion that would allow "a claimant or subsequent reviewer to follow the adjudicator's reasoning," it does not follow that Ms. Groce's Assessment should automatically be fully accredited. The Court cannot weigh evidence or make credibility determinations on behalf of the Commissioner as factual determinations are within the sole province of the ALJ and the Commissioner. *Hogg*, 987 F.2d at 331. Even though the ALJ erred in finding that Ms. Groce's opinion is inconsistent with other evidence of record, Ms. Groce's Assessment did contain information that could indicate Plaintiff's behavior was appropriate, his memory was intact and his attention was normal. (Tr. 523.) Because Ms. Groce's Assessment is pertinent to the VE's testimony, and ultimately the ALJ's findings, the Commissioner should be given the opportunity to conduct further hearings and develop the record so the ALJ may properly evaluate what weight to assign it.

Finally, the Court is particularly aware of the importance of the "treating physician rule." As noted above, the opinions of a treating physician are entitled to great weight when evaluating the proof of disability of the claimant. *Rogers*, 486 F.3d at 242. Even though the ALJ may not neglect the opinion from a nurse practitioner who has maintained an ongoing relationship with the claimant, the ALJ must also fully develop the record to find whether there are any medical opinions from a treating source, and give "good reasons" for weight he assigns those opinions. This preference for medical opinions from a treating source cannot be simply abrogated, even in light of the practical reality that the need for sources other than "acceptable medical sources" has

increased over time. Thus, the Court finds remand appropriate here for the ALJ to fully develop the record regarding treating source opinions and his reasons for weight he assigns them.

IV. CONCLUSION

For the reasons stated above, Plaintiff's Motion (Doc. No. 17) is **GRANTED** and the Court **ADOPTS** the Magistrate Judge's Report with the modifications given herein. Accordingly, the Court **REMANDS** the case to the Commissioner for further proceedings as outlined above. The Clerk of the Court is **DIRECTED** to close the case. Plaintiff's Motion for Status (Doc. No. 26) is **TERMINATED AS MOOT**.

It is so ORDERED.

Entered this 21st day of August, 2013.

JOHN T. NIXON, SENIOR JUDGE
UNITED STATES DISTRICT COURT